UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM R. EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-02172-JRS-TAB |
| | ) | |
| WEXFORD INC., | ) | |
| | ) | |
| Defendant. | ) | |

**Order Granting Defendant's Motion for Summary Judgment**

Plaintiff William R. Evans filed this civil rights action alleging that defendant Wexford Inc. ("Wexford") maintained a policy that deprived him of needed medication while he was incarcerated in the Indiana Department of Correction. Wexford has moved for summary judgment.

**I.     Summary Judgment Standard**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

Mr. Evans did not respond to the motion for summary judgment. This Court's local rules require a party opposing summary judgment to file a response brief and any evidence not already in the record that the party relies on to oppose the motion. L.R. 56-1(b). The Seventh Circuit has "repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009); *see Streckenbach v. Meisner*, 768 F. App'x 565, 567 (7th Cir. 2019). By failing to respond to Wexford's summary judgment motion, Mr. Evans has conceded their account of the undisputed facts. This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Undisputed Facts

At all times relevant to the complaint, Mr. Evans was in custody at Indiana Department of Correction ("IDOC") facilities. Dkt. 52-2 at 9−10 (Evans deposition). Since April 1, 2017, Wexford has contracted to provide medical services to inmates in the IDOC. Dkt. 52-1 at 1, ¶ 5 (Dr. Michael Mitcheff affidavit).

Mr. Evans has a long history of back pain. *Id.* at 2, ¶ 7. In August 2017, he was treated at a chronic care visit and prescribed Neurontin, an anti-epileptic drug approved by the FDA to treat patients with chronic nerve-related pain. *Id.* at 2, ¶ 9.

On February 2, 2018, Mr. Evans's Neurontin prescription lapsed and he stopped receiving the medication. Dkt. 52-3 at 5−6 (medical records). Mr. Evans submitted a healthcare request form and was seen by a nurse. *Id.*

On February 6, 2018, Mr. Evans was treated by Dr. Bruce Ippel. Dr. Ippel noted that Mr. Evans's gait was "steady and stable albeit a little slow." *Id.* at 7. Mr. Evans showed no muscular atrophy, and his back appeared normal to visual inspection. *Id.* Dr. Ippel did not renew Mr. Evans's Neurontin prescription but instead prescribed a steroid treatment and ordered physical therapy. *Id.* at 7, 9. The physical therapy began on February 27, 2018. *Id.* at 13.

Dr. Ippel's choice not to renew Mr. Evans's Neurontin prescription coincided with a Wexford policy decision to remove the medication from its list of formulary treatments for pain. *See* dkt. 52-2 at 16−18; dkt. 52-1 at 4−5, ¶ 21. Neurontin was removed from the formulary due to concerns about misuse, abuse, and diversion. Dkt. 52-1 at 2−3, ¶¶ 11−12. After Neurontin was removed from the formulary list, prison doctors could no longer prescribe it as a "first line" treatment. *Id.* at 4, ¶ 21. A doctor must first obtain approval from the regional medical director before prescribing Neurontin to an inmate. *Id.* at 5, ¶ 22.

On February 21, 2018, Dr. Ippel followed up with Mr. Evans, who reported that the steroid treatment was not effective. Dkt. 52-3 at 10. Mr. Evans did not complain of withdrawal symptoms after being removed from Neurontin. *Id.*; *see also* dkt. 52-2 at 34-35 (Mr. Evans acknowledging that he did not seek medical treatment for his withdrawal symptoms). Dr. Ippel prescribed Cymbalta, which is another FDA-approved medication to treat chronic pain. *Id.* at 10−11. Dr. Ippel followed up again on March 26, 2018. Dkt. 52-3 at 15. Mr. Evans reported that Cymbalta was ineffective, and Dr. Ippel submitted a formulary exception request for Neurontin. *Id.*

Mr. Evans received a prescription for Neurontin, but in July 2018 he complained to Dr. Mark Cabrera that the medicine was ineffective and requested a higher dose. *Id.* at 18. Dr. Cabrera noted that Mr. Evans was already receiving a high dose and concluded that the medicine's efficacy was "[d]ubious." *Id.* He instead prescribed Trileptal, Meloxicam, and Tylenol, relying on a study which concluded that Trileptal was more effective than Neurontin for non-diabetic neuropathy (like Mr. Evans's). *Id.*

Mr. Evans was prescribed Neurontin once more after being transferred to Plainfield, but it was discontinued after Mr. Evans was captured on camera diverting the medication to another inmate. Dkt. 52-2 at 38.

### III.   Discussion

Mr. Evans alleges that Wexford's policy decision to remove Neurontin from the formulary list caused Dr. Ippel and Dr. Cabrera to abruptly discontinue his Neurontin prescriptions without first tapering the doses.

Although a private entity, Wexford acts under color of state law and therefore may be liable for violating Mr. Evans's Eighth Amendment rights under the theory announced in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954,

966 (7th Cir. 2019). "Prevailing on such a claim requires evidence that a Wexford policy, practice, or custom caused" the deliberate indifference. *Id.* "It does not matter if the policy was duly enacted or written down, nor does it matter if the policy counsels aggressive intervention into a particular matter or a hands-off approach." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). To prevail on a *Monell* claim, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal [or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020).

The undisputed facts would not allow a reasonable jury to find that Wexford acted with deliberate indifference to Mr. Evans's risk of withdrawal symptoms or that Wexford's policy change caused a constitutional injury to Mr. Evans. Mr. Evans presents no evidence that Wexford's policy decision to remove Neurontin from the formulary list required either Dr. Ippel or Dr. Cabrera to abruptly discontinue his prescription. Dr. Ippel did not cancel Mr. Evans's prescription in February 2018; he failed to renew the prescription several days after it had expired and Mr. Evans had stopped receiving the medication. Dkt. 52-3 at 5−9. There is no evidence that Wexford's formulary change prevented Dr. Ippel from tapering Mr. Evans's Neurontin dosage before the prescription expired.

As for Dr. Cabrera, there is no evidence that Wexford's formulary change had any effect on his treatment of Mr. Evans. Dr. Cabrera discontinued Neurontin after Mr. Evans reported continued pain and requested an increase to his already high prescribed dose of Neurontin. Moreover, both Dr. Ippel and Dr. Cabrera continued to treat Mr. Evans's condition with appropriate, FDA-approved treatments included on Wexford's formulary list.

Because a reasonable jury could not find that Wexford was deliberately indifferent to Mr. Evans's risk of withdrawal or that he suffered a constitutional injury, Wexford is entitled to judgment as a matter of law.

### IV.   Conclusion

Wexford's motion for summary judgment, dkt. [50], is **granted**. Final judgment shall now enter.

**IT IS SO ORDERED.**

Date:   3/3/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

WILLIAM R. EVANS
701 Pyramid Hill Blvd
Hamilton, OH 45013

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com